IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

**Civil Action No. 04-cv-02440-ZLW-MJW**

WILLIAM SAMUEL McLEAN, JR.,

Plaintiff,

v.

DR. STEVEN R. CLOUGH, O.D.,

Defendant.

**RECOMMENDATIONS ON
DEFENDANT CLOUGH'S MOTION TO DISMISS (Docket No. 84)
and
DR. CLOUGH'S MOTION TO DISMISS FOR FAILURE TO COMPLY WITH
CERTIFICATE OF REVIEW REQUIREMENT  (Docket No. 91)**

**MICHAEL J. WATANABE
United States Magistrate Judge**

This case is before this court pursuant to an Order of Reference to Magistrate Judge issued by Senior District Judge Zita L. Weinshienk on January 12, 2005. (Docket No. 9).

This action was commenced on November 24, 2004 (Docket No. 3), by the incarcerated plaintiff who was then acting pro se.  In his Bivens[1] civil rights Complaint, plaintiff claims that on March 16, 2004, during an eye examination, despite knowing plaintiff's history of epilepsy and a stroke eighteen months prior, the defendant was deliberately indifferent to the plaintiff's serious medical needs by conducting a visual

---

[1] Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971).

field mapping test which had a series of flashing lights that triggered an epileptic seizure and resulted in permanent stroke-like symptoms. Plaintiff claims he had never had such a test before and was unaware that it might trigger a seizure. Plaintiff contends, however, that the defendant "should have known better." Plaintiff is seeking one million dollars from the defendant "for the perment [sic] damige [sic] he caused to my body and the loss of abilty [sic] to achive [sic] ann [sic] erection and have sexual active [masterbation] and the on going pain & suffering Dr. Clough caused me." (Compl. p. 8).

Pro bono counsel entered his appearance for the plaintiff on June 28, 2005. (Docket No. 80).

Before the court are Defendant Clough's Motion to Dismiss, which was filed on July 7, 2005 (Docket No. 84), and Dr. Clough's Motion to Dismiss for Failure to Comply with Certificate of Review Requirement, which was filed on August 10, 2005 (Docket No. 91). Plaintiff, through counsel, filed a response to each motion (Docket Nos. 87 and 93), and the defendant filed a reply regarding his first motion (Docket No. 89). The court now being fully informed makes the following findings, conclusions, and recommendations.

For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all factual allegations in the complaint as true and resolve all reasonable inferences in the plaintiff's favor. <u>Morse v. Regents of the Univ. of Colo.</u>, 154 F.3d 1124, 1126 (10th Cir. 1998); <u>Seamons v. Snow</u>, 84 F.3d 1226, 1231-32 (10th Cir. 1996). A case should not be dismissed for failure to state a claim unless the court

determines beyond doubt that the plaintiff can prove no set of facts which entitles him to relief.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

**Exhaustion of Administrative Remedies**

In his first motion to dismiss, the defendant first asserts that dismissal is warranted because the plaintiff has failed to plead or show that he has exhausted his administrative remedies.  The Prison Litigation Reform Act of 1995 ("PLRA"), *inter alia*, amended 42 U.S.C. § 1997e(a) to require a prisoner to exhaust "such administrative remedies as are available" before suing over prison conditions.  Section "1997e(a)'s exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences."  Porter v. Nussle, 534 U.S. 516, 520 (2002). "[E]xhaustion in cases covered by § 1997e(a) is now mandatory. . . . Thus federal prisoners suing under *Bivens* . . . must first exhaust inmate grievance procedures . . . ." Id. at 524.  "Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit." Id. at 524 (citing Booth v. Churner, 532 U.S. 731, 741 (2001)).

In response, the plaintiff, through counsel, notes that a prior Complaint was dismissed without prejudice by Judge Weinshienk on August 18, 2004, because the allegations in that Complaint were not adequate as to exhaustion of administrative remedies.  Plaintiff asserts that he subsequently pursued and completed all relevant administrative procedures, and he notes that he attached copies of those documents to his Prisoner Complaint in this action.

4

The defendant has attached to his Reply (Docket No. 89) copies of the documents concerning the plaintiff's exhaustion of his administrative remedies. Defendant asserts that those documents demonstrate two significant problems:

> [] First, Plaintiff's initial complaint had to do with not an eye exam, but rather an episode of bed wetting four months later. Only as materials were filed during the course of appeals, were issues related to Dr. Clough's March 16, 2004, eye exam raised. Thus, there appears to be a deficiency in the internal appeals procedure. Admittedly, subsequent materials demonstrate that reviewers on appeal considered whether the seizure during the eye exam of March 16, 2004, resulted in any injury to Plaintiff.
>
> [] The second, more significant problem revealed in Exhibit B relating to the administrative appeals is that Plaintiff thwarted efforts to examine his claims within the context of his administrative appeal. Twice it is noted that Plaintiff refused to take an MRA to examine the origin of his alleged neurologic problems. Moreover, the final denial of Plaintiff's claim shows that Plaintiff refused to take the MRA not once, but twice. His first refusal was on July 16, 2004, during his appeals process and the second instance was August 18, 2004, just as he was seeking appeal through the Central Office Administration. The final denial of his claim demonstrates that the failure to take this recommended MRA resulted [in] a complete absence of any evidence supporting Plaintiff's claim for injuries.
>
> [] Where Plaintiff thwarts efforts to investigate his claim in the administrative process, he cannot later assert he has "exhausted" his administrative remedies. The Plaintiff cannot proceed with a civil claim when he has *substantively* failed to exhaust his administrative remedies.

(Docket No. 89 at 4-5).

Upon review of the documents relating to the plaintiff's administrative review, this court finds that while the plaintiff's administrative submissions were not models of clarity, the people who reviewed his claims were able to interpret them as a complaint about plaintiff suffering a seizure following his eye exam by the defendant. The court

5

further finds that the plaintiff's purported refusal to have certain medical testing done to establish his claim does not lead to a finding that plaintiff did not raise and exhaust his claim at the available levels of administrative review. Instead, his alleged refusals may very well go to the weight of his claim. This court concludes that the plaintiff adequately exhausted his available administrative remedies so as to avoid dismissal pursuant to 42 U.S.C. § 1997e(a).

**Deliberate Indifference**

In his first motion, the defendant next asserts that the plaintiff has not sufficiently plead that the defendant acted with deliberate indifference. "[P]risoners have an Eighth Amendment right to adequate medical care . . . ." Oxendine v. Kaplan, 241 F.3d 1272, 1276 (10th Cir. 2001). As stated by the U. S. Supreme Court:

> elementary principles establish the government's obligation to provide medical care for those whom it is punishing by incarceration. An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. In the worst cases, such a failure may actually produce physical "torture or a lingering death," . . . the evils of most immediate concern to the drafters of the Amendment. In less serious cases, denial of medical care may result in pain and suffering which no one suggests would serve any penological purpose. . . . The infliction of such unnecessary suffering is inconsistent with contemporary standards of decency . . . .

Estelle v. Gamble, 429 U.S. 97, 103 (1976) (citations omitted). "[I]n cases where prisoners allege that inadequate or delayed medical care violated their Eighth Amendment rights, it has been established that '[p]rison officials violate the Eighth Amendment [only] when they are deliberately indifferent to the serious needs of prisoners in their custody.'" Oxendine v. Kaplan, 241 F.3d at 1276 (citations omitted).

6

Such claims "thus involve both an objective and a subjective component, such that [the court] must determine both 'whether the deprivation is sufficiently serious' and 'whether the [government] official acted with a sufficiently capable state of mind.'" Id

Defendant asserts that the plaintiff alleges no facts indicating that the defendant

> administered the visual fields testing, utilizing flashing light, in a way in which one could infer that he disregarded a substantial risk of serious harm to Plaintiff McLean.  Indeed, there was no such substantial risk.  McLean's complaint concedes that he had never suffered a seizure as a result of visual testing, and there is nothing alleged that suggests McLean was substantially likely to suffer a seizure or any significant injury as a result of the visual testing.  Nor are there any allegations that Dr. Clough was actually aware of a particular, substantial risk that the lights for the visual mapping examination would cause Plaintiff McLean to suffer a seizure. . . .  To the contrary, Dr. Clough provided appropriate assistance until Dr. Leyba arrived.
>
> Plaintiff McLean's Complaint also reveals that appropriate follow-up care was provided by others at ADX.  There are no allegations indicating that Dr. Clough acted in any indifferent way towards Mr. McLean after his apparent seizure activity.
>
> Thus, dismissal is appropriate under § 1997e of the PLRA because, as pled, Plaintiff McLean's complaint is frivolous and fails to state a claim upon which relief may be granted.

(Docket No. 84 at 6).

Plaintiff, through counsel, responds to the defendant's argument as follows:

> [] The visual field test was performed unnecessarily and not for any diagnostic or treatment even for Plaintiff.  Perhaps it was ordered so that Defendant Clough could overcharge the prison for his services: discovery may be able to determine this.  The test was done after the eye exam was completed and had never been ordered in any previous eye exams for the Plaintiff.  In this sense it was deliberate and it certainly had no relevance to Plaintiff's eyeglass exam, and, therefore, was at least indifferent to him.  It may also have been an illegal padding of the chart.
>
> [] As stated at page 4-B of the original complaint:

7

> *"Next Dr. Clough did the eye exam.  He must of completed the eye exam because I've got new glasses.  Dr. Clough desired to run one more test, one he had never done in all the times I have seen him.  It was the visual field mapping test that wound up hurting me."*
>
> [] The Complaint as refiled on November 23, 2004, bears the same docket number as the original Complaint from which the quote in paragraph 10, above, was taken: 04-Z-2440.  That original pleading should be considered part of the Plaintiff's allegations herein as to this Motion and Response.
>
> [] The visual field mapping test could not have been completed and used by Defendant Clough because the onset of the Plaintiff's stroke-like seizure occurred during the middle of that test.  Since the eyeglasses were delivered, the relevant eye exam must have been completed before that test was begun.  The inference is compelling that it was not indicated, not necessary, not relevant, and not for this patient's benefit.  Perhaps it was for Defendant Cough's sole benefit in padding his bill to the prison, an illegal activity, and one that deserves to be disclosed, described, and sanctioned independently of this litigation
>
> [] This sort of excessive treatment is the basis for a classic malpractice suit anywhere and anytime.  It increases the risks and, in this case, produced unnecessary damages to Plaintiff.  If Dr. Clough in fact charged the prison for this procedure, it may be more than negligence: a criminal complaint may be proper, particularly if he as [sic] a history of such excessive billings to the United States of America.

(Docket No. 87 at 3-4).

In his Reply (Docket No. 89), defendant accurately notes that the plaintiff did not allege anywhere in his Complaint that the defendant performed visual fields testing for improper economic motive.  Defendant asserts that plaintiff's counsel's contentions regarding such alleged "illegal padding" fail the requirements of proper pleading under Fed. R. Civ. P. 11 and should be stricken.  Furthermore, defendant contends that irrespective of counsel's inappropriate speculation, he does not address the applicable

8

legal standards regarding deliberate indifference and allegedly has not averred any fact objectively demonstrating that the defendant had a deliberate indifference to a serious medical condition which went unattended or demonstrating a subjective component of deliberate indifference.  According to the defendant, "[s]pecifically, there is no allegation in Plaintiff's Complaint that Dr. Clough subjectively knew of a reasonable likelihood of significant injury or that he should have been aware of such." (Docket No. 89 at 6).  Finally, defendant contends that the plaintiff's failure to participate in requested medical investigation rebuts any claim of deliberate indifference.

      Although in his Response plaintiff's counsel refers to factual averments made in the Complaint plaintiff filed in his previous action, Civil Action No. 04-ES-1154,  that action was dismissed, and the Complaint in this action does not incorporate the prior pleading.  The operative pleading here is the Complaint filed in this action.  Upon a close review of that pleading, this court finds that the plaintiff has adequately stated an Eighth Amendment claim so as to defeat a motion to dismiss at this early stage in the litigation.  It is true that the plaintiff does not make any averments of "illegal padding" or overcharging or a failure to treat the plaintiff after his seizure.   However, while the Complaint is certainly not a model pleading, it does contain allegations that the defendant was aware of the plaintiff's medical history, including epilepsy, that it is common medical knowledge that flashing lights can trigger an epileptic seizure, and that the defendant was thus deliberately indifferent when he conducted the visual field mapping eye exam which involved a series of flashing lights in plaintiff's eye.  (See

9

Compl. At 3A ["the flashing lights and epileptic is commion [sic] medical knowleg [sic],", 4 "[Dr. Clough . . . put[] me in front of flashing light with full knowledge epilepcit [sic] can't take flashing light"], 4-C [flashing lights triggering seizures "is no secriet [sic] to medical personal [sic]"]). 4-E ["as Dr. Leyda was pushing me down the hall he said . . . "'flashing lights can cause a neurological reaction' - 'you should not of been in that mechain [sic]'"]. Based upon these allegations, this court cannot find at least at this time that the plaintiff can prove no set of facts which entitles him to relief. Therefore, it is recommended that the defendant's motion to dismiss for failure to state a claim be denied.

**Certificate of Review**

Pursuant to Colorado Revised Statute § 13-20-602(1)(a):

(1)(a) In every action for damages or indemnity based upon the alleged professional negligence of . . . a licensed professional, the plaintiff's or complainant's attorney shall file with the court a certificate of review for each . . . licensed professional named as a party, as specified in subsection (3) of this section, within sixty days after the service of the complaint, counterclaim, or cross claim against such person unless the court determines that a longer period is necessary for good cause shown.

§ 13-20-602(1)(a), C.R.S. (2003). Furthermore, subsection (4) of that section provides that "[t]he failure to file a certificate of review in accordance with this section shall result in the dismissal of the complaint, counterclaim, or cross claim." § 13-20-602(4), C.R.S. (2003).

In his second motion to dismiss, the defendant moves to dismiss this case due to the plaintiff's failure to comply with § 13-20-602, C.R.S. Defendant asserts that at its heart, this is a professional liability case against a Colorado licensed professional,

10

namely, a doctor of optometry. Defendant states that the Complaint was filed on November 24, 2004, and according to the provisions of § 13-20-602, C.R.S., a certificate of review was required to be filed on or before January 15, 2005. Defendant notes that the plaintiff has not sought an extension of time within which to provide his certificate of review. Defendant further notes that the plaintiff has brought a constitutional claim[2] in federal court. Nevertheless, defendant asserts that in federal proceedings regarding prisoner health care the federal court applies substantive state law. (Mot. at 3, citing 28 U.S.C. § 13-46(b)(1); Flynn v. United States, 902 F.2d 1524, 1527 (10th Cir. 1990)). Defendant contends that the Colorado certificate of review statute is a "substantive" rather than a procedural rule of law and that the certificate of review requirement in a professional liability case applies to the plaintiff irrespective of whether he is represented by counsel. Finally, defendant finds the recent case of Hill v. SmithKline Beecham Corp., 393 F.3d 1111, 1118 (10th Cir. 2004), to be instructive and makes it undisputed that in a federal case, a Colorado licenced professional is entitled to the protections of the certificate of review statute and that a plaintiff must seek an outside review of a licensed professional to establish that his claims may proceed because they do not "lack substantial merit." Because the plaintiff has failed to obtain a certificate of review and has not sought an extension of time within which to provide one, the defendant seeks a dismissal of the Complaint and an award of reasonable attorney fees and costs.

---

[2]Defendant misstates in his motion that the plaintiff has brought his claims under the Eleventh Amendment. (Mot. at 3).

11

In response, plaintiff's counsel states that he is unable to communicate with the plaintiff and that he is not aware of any professional review of the plaintiff's claim nor any certificate having been made as a result of such a review. Plaintiff's counsel further states that he recommends that the plaintiff concede the facts as alleged in the defendant's motion and seek leave of court to waive the statutory requirement based upon the plaintiff's prison status and clear inability to comply "through no fault of his own." (Docket No. 93 at 1). Finally, plaintiff's counsel requests that a ruling on this motion be deferred until such time as plaintiff is found, normal communications are restored, and time for amendments (45 days) is provided. That request is denied in view of the recommendation below that the defendant's motion be denied and in view of the fact that the plaintiff's location is readily obtainable from the Federal Bureau of Prisons Inmate Locator on www.bop.gov (which currently indicates that the plaintiff is located in USP Terre Haute).

Defendant correctly states that the certificate of review mandate is a substantive, rather than procedural, rule of law, Trierweiler v. Croxton & Trench Holding Corp., 90 F.3d 1523, 1541 (10th Cir. 1996), and as such would be applicable to a claim of professional negligence here even if the plaintiff were still proceeding *pro se*. Cestnik v. Federal Bureau of Prisons, 2003 WL 22969354, *2 (10th Cir. Dec. 18, 2003) (citing Yadon v. Southward, 64 P.3d 909, 912 (Colo.Ct.App. 2003)). This mandate has been applied to other federal inmates. See, e.g., Hill v. SmithKline Beecham Corp., 393 F.3d 1111, 1118 (10th Cir. 2004) (plaintiff was incarcerated at ADX Florence). Therefore, the mere fact that plaintiff is incarcerated does not waive this statutory requirement. In this

12

case, more than 60 days have passed since the action was commenced on November 24, 2004 (Docket No. 3), yet the plaintiff has not filed a certificate of review, nor has he ever sought an extension of time within which to file such a certificate.

The Colorado statutory language, however, specifically requires such certificate for "every action for damages or indemnity based upon the alleged **professional negligence** of . . . a licensed professional." § 13-20-602(1)(a), C.R.S. (emphasis added). Here, plaintiff is raising an Eighth Amendment claim, not one of professional negligence. Furthermore, it is well established that "[t]o establish deliberate indifference, a prisoner must demonstrate more than mere negligence; a negligent failure to provide adequate medical care, even one constituting medical malpractice, does not rise to the level of a constitutional violation." Alejo v. Gonzalez, 2000 WL 64317 (10th Cir. Jan. 26, 2000) (citing Estelle v. Gamble, 429 U.S. at 105-06); see Glick v. Romer, 2000 WL 328127 (10th Cir. Mar. 29, 2000). Therefore, this court finds that the plaintiff was not required to file a certificate of review in order to maintain his federal constitutional claim. The court notes that it does not readily appear from the verbose pro se Complaint that the plaintiff has even raised a negligence claim. In his response papers, however, plaintiff's counsel seems to imply that this case includes such a claim. To the extent a negligence/malpractice claim has been raised by the plaintiff, it is recommended that it be dismissed based upon the plaintiff's failure to file a certificate of review.

**WHEREFORE**, for the foregoing reasons, it is hereby

**RECOMMENDED** that Defendant Clough's Motion to Dismiss, which was filed on

13

July 7, 2005 (docket no. 84), be denied.  It is further

**RECOMMENDED** that Dr. Clough's Motion to Dismiss for Failure to Comply with Certificate of Review Requirement, which was filed on August 10, 2005 (Docket no. 91), be granted in part, only to the extent the plaintiff may be raising a state law claim of professional negligence.

**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have ten (10) days after service of this recommendation to serve and file written, specific objections to the above recommendation with the District Judge assigned to the case.  The District Judge need not consider frivolous, conclusive, or general objections.  A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, Fed. R. Civ. P. 72(b), Thomas v. Arn, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions.  Makin v. Colorado Dep't of Corrections, 183 F.3d 1205, 1210 (10th Cir. 1999); Talley v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Dated: September 30, 2005            s/Michael J. Watanabe
       Denver, Colorado              Michael J. Watanabe
                                     United States Magistrate Judge